ALBERT-SHERIDAN, SUSANNE C. BRUNSKILL, TEXEL, FORT EPPERNESE, STATE CORE OF CALIFORNIA, MEREKLUID, LENORE ELBERT, APPELLANT, AND PLAINTIFF IN THE ADVERSARY PROCEEDING BELOW. I would like to reserve seven minutes. Seven minutes, okay. Go ahead, please. Thank you. May it please the court, this is an appeal on a motion to dismiss and also denial of a TRO, an adversary proceeding. This actually deals with my own bar license and the sanctions that were awarded, discovery sanctions in a civil matter, plus then the court attached 6086.10 costs. Well, I had argued that actually this was a violation of state not to reinstate my license because the suspension was only for 30 days. And it's been almost a year now. And the only reason why I'm not practicing at this moment is because I haven't paid these costs back to the state bar court. So we have three cases. We have Scheer, Finley, and Tager. After the panel was assigned, I also found Hawaii versus Parsons. And it appears that the Ninth Circuit is going back and forth. So we have Tager in 2005. Well, it's changing its mind. I'm not sure it's going back and forth. That's a different issue. Yeah, it's ever evolving. Yeah. There's probably not enough back for your version of the world. There's a lot of forth, right. I understand. Okay. Yes. So Scheer, Finley, and Tager are all distinguishable from this situation. And the reason on that is Scheer, when you look at the footnote 2 in Scheer, when the Ninth Circuit found that her money that she was supposed to pay in order to get her license reinstated, in footnote 2 they said look at the underlying suspension, the reason for it. In Scheer, it was money owed to a client of $5,500. And in Finley, it was also money owed to a client. In my case, this was money that was owed to opposing counsel as part of a discovery sanction. So this isn't a case where it was the state bar court found I had commingled funds or, you know, had nothing to do with moral turpitude or any of those other type of customary things. And that's why I filed also. Why is misbehavior directed at a client different for this purpose from misbehavior directed at an adversary? And I understand you dispute that there was misbehavior, but just take that as an assumption for the purpose of the question. For the purpose of the question, it's because we're talking about public interest. Is this a regular debt collection matter, or are you doing something acting as a state agency intended to protect the integrity of the judicial system and intended to protect the public, protecting your own clients? An attorney's not overreaching their own client, right? And here there were as far as possible as you could ever get to overreaching your client. Here it showed Ike stepped in at the last minute to help people who were in pro per on an unlawful detain or trial. And seven days later, the judge hits me with sanctions, discovery sanctions for discovery that he found not to be not done at all because I had actually tried to hurry up and do some that was outstanding, but he found the responses to be inadequate. So, you know, when you look at the underlying discovery sanction, I was doing everything zealously advocating for my client at that point in time. So I think that that's a big distinction. But the whole, I mean, the font of all of this, I think, is the notion that you may think the state bar takes too far, that they have the ability to regulate your conduct and to monitor your conduct. And one aspect of that may be you're mistreating a client. Another aspect may be that you're doing something improper in the course of litigation that harms, you know, another party. And by the time it gets to them, harms the integrity of the process in their view, and they think it becomes a different question when it comes to them. So I think there's two things going on here. One is there's lots of things that the state bar might think you're doing that you oughtn't to be doing. And once it becomes their business, it's no longer about you versus opposing counsel. So can you address both of those for me? Yes, I can. And that is an interesting concept. And if the state bar wanted to, at that point, find the latter, that, you know, now all of a sudden, you know, you're being disrespectful to the court, it could have went down that road. But it didn't go down that road in this case. In this case, it merely found one violation under 6103, which I have contested now is unconstitutional. Right. And if you look at the ABA model rules, under the ABA model rules, in comparison to 6103, I would have never been sanctioned under the ABA model rules, which most of the states follow. And now finally California has adopted some of those rules. And the reason for that is because there is supposed to be this good faith notion on whether or not you follow an order. This order in this case was absolutely void for a lot of reasons. You're being more specific than I was being. What I'm suggesting is there's lots of different relationships that the state bar is worried about. One is with your client. Another is generally with the process and doing things that result in, you know, sanction orders. And, you know, had you paid it then, it wouldn't have been an issue. When you don't pay it, in their mind, when it gets into their system, it becomes something that's disciplinary and, you know, rehabilitative and so on. It's no longer about you and other counsel. It's about something else. And that's where the font of their position, right, is that this all changes once they get involved. Right. But the issue here is this wasn't a sanction. It wasn't a CCP 128.5 or 128.7 sanction. Yeah. The other side never went to the trial judge, which they should have, and tested the validness or the voidness of that order with the contempt hearing, right? Then once you have the contempt hearing with all those procedural due process safety guards in place, now the state bar has something. But until that happens, they don't have anything. What the state bar did here was they flipped it. Can I ask you just a clarification question? Did you raise this with Judge Clarkson? Yes. Okay. Yeah, we went through these. Okay, I'm going to cut to the chase what Judge Clarkson said, which I thought was interesting, even though he ruled against me. He did pinpoint the right thing. He nailed down the state bar and he said, but look at this order, the Supreme Court order, right? Mm-hmm. And he said, this is not the Supreme Court issuing a sanction on Ms. Elbert in this amount of money. They basically just have said for her to pay the state court sanction order. They didn't actually create a new order, and I believe that this is directly answering your question, just in a little bit different way. How does that help you? Oh, it helps me a lot. I'll be the judge of that. How do you think? It helps me a lot because under 11 U.S.C. 523A7, with the nature of the debt, the nature is a defined penalty of forfeiture paid to or benefit of the government. This is definitely paid to a third party, and it's definitely not a fine penalty or forfeiture. I'm hearing you, and this will probably come up again in your seven minutes, which you're getting close to. But, you know, isn't what's going on here is between the Kelly case and other recent authorities, it looks like we're being directed away from some of the language of 523A7? Oh, we are definitely being directed away. Okay. That's really what your concern is, right? Yes. Okay. Yes, we are being, yeah, it's getting so broad now. And the question is, what can we do about it as a humble interim appellate panel? Oh, you can reverse. Okay. And I think also, I mean, if this does go up to the Ninth Circuit, which it might, you know, and it seems to, like I said, and I was bold in Clarkson, I'll be bold on this record, too. I think Finley is absolutely wrong. We need to, maybe we don't have to overrule it in the Ninth Circuit, but we need to limit it to its facts. Okay. So that's what you need us to do. Yes. Okay. And more. You know, and all the other things that were in there about the constitutional issue. You're about at your seven minutes. You can keep going if you wish, but you'll only have left whatever you have left. Okay. Just one more thing. I mean, we could limit it to these odd facts, right, because my facts are so far afield, and it would be safe. But since all this work has been done, and I've lost my license for a year, I think we need to do the thing that's in the public interest and make something that's really solid so this doesn't happen to another attorney again. Thank you. Thank you. Thank you. Ms. Grant. Good morning, Your Honor. Good morning. I believe Ms. Albert classified the two types of costs she owed already for the court, which we agree with. They are both costs she owes that the California Supreme Court ordered as part of her discipline to be paid to a third party that was part of the discovery sanction, as well as disciplinary costs she owes pursuant to Business and Professions Code 6086.10. I just want to clarify to the court that Ms. Albert was not suspended for failure to pay a debt. She was suspended, as was pointed out by Ms. Albert, under Business and Professions Code 6103 for willful disobedience of a court order. But that court order required her to pay money, right? It did, but the ethical violation was the willful disobedience of a court order, and that was why she was actually suspended for a month. Now, that court order was entered in 2012. It became a final court order. It was not appealed, and then the State Bar recommended discipline, and the California Supreme Court is the entity that actually gives the discipline. The State Bar does not discipline attorneys. So the California Supreme Court, as part of her discipline, said she needs to pay this money to that third party. Now, Judge Clarkson found that the discovery sanctions themselves were nondischargeable, but I would argue that that doesn't matter. They could have even been discharged because once they became part of that California Supreme Court order, they are nondischargeable debt under the rationale of Finley because of the state's very important public protection interest and benefiting society, the same way restitution is under Kelly. However, I think— Let me stop you for a second. It seems to me that if I were just reading 523A7 for the first time, just reading the words, I think she probably wins on at least the discovery sanction because discovery sanction is not payable to and for the government benefit. It's just not. It's payable to a third party. And as far as the cost recovery for the State Bar, that's a cost recovery. Doesn't that sound like a pecuniary loss? Yes. So if I were just reading the statute, I would say she's got a pretty good case, but we're not just reading the statute. Right. We now have Finley. Right. We are not reading the statute. Well, you raised two questions. One is about the sanction and the other is about the disciplinary cost, so I'll address both of them. In terms of the sanction, for one thing, you're not just looking at the statute. The Ninth Circuit, the case law in this circuit has interpreted the words payable for and to the benefit of the state to mean that they could be payable to third parties. There's cases that I've cited in my brief in this circuit that have criminal restitution that are payable to third parties were non-dischargeable under the rationale of Kelly. And, in fact, in Kelly, it was restitution that was payable to the state that was then distributed to the victims. So whether it's payable to the state of California or to a third party is not determinative to the analysis. And I want to add that this was similar to criminal penalties. This was discipline imposed by the California Supreme Court as part of her rehabilitation, as part of making her face her ethical misconduct. And that's what the state bar does. The state bar is not a debt collector. I think Ms. Albert continuously refers to that in her briefs, but that's not the state bar's job. That's not what we do, and the California Supreme Court does not discipline people for debt. In terms of your second question about the cost for disciplinary costs, I do agree. There are a number that comes up in terms of to pay for the cost of the prosecution. However, the Ninth Circuit addressed in Finley that there was a statutory amendment in 2003 to 6086.10 that specifically stated that these costs are deemed penalties which are, quote, payable to and for the benefit of the state bar of California in order to promote rehabilitation and to protect the public. And the court in Finley, which this court is bound by, stated that those same costs that Ms. Albert is being charged with paying, non-dischargeable under 523.87. So if we find this is close enough to Finley, the issue really, at least from Ms. Albert's perspective, the issue is to what extent can the state simply rewrite what the requirements are and sort of get around 523.87, the plain language of which would require you to lose? So what are the policies? Is there a reason why we should allow that? Are there dangers to that? And what can we do about it, which is the whole other question. Well, I don't think this court can do anything about it because I think this court is bound by Finley. And I think the Ninth Circuit, when they addressed the issue, could have said, oh, that's unconstitutional. The state can't do that. But they didn't. They said the state had a valid right. It doesn't have to be unconstitutional. It can be subverting the intent of a statute.  And the Ninth Circuit looked at it and they said, you know, this is the intent of the legislature to make these costs, these disciplinary costs, a penalty to benefit the state of California. And the Ninth Circuit could have ruled differently and they didn't. And I think the court is bound by that. This court is bound by that decision. And, in fact, because of the language of 525, in order to find that the state bar violated 525, we must refuse her license solely because of the failure to pay a dischargeable debt. So I would argue that the court, the easy way out is just looking at Finley and you don't even have to address the sanctions because she has to pay both those costs in order to get her license back. Well, I think it's true. I mean, if there is something other than that, so if we find one of these dischargeable debt or not, 525 doesn't work for her. Exactly. That I'm understanding. Right. So I think that, you know, I think it's a fairly straightforward case. I think Finley applies here. And then that's the end of the story. However, I also would say that the cost, she owes ordered by the California Supreme Court, are also non-dischargeable under the rationale of Kelly. And I think that's all I have unless you have further questions for me. So there wasn't, at least not sustained anyway, any ethical violations other than the two monetary issues we've discussed? I ask because 525A says solely for the non-payment of a dischargeable debt. Right. Her initial discipline came out of two acts of misconduct. One was failure to cooperate in a state bar investigation. And then the other one was a violation of the court order. However, her actual suspension did end. So right now she does remain suspended solely because she failed. She has not paid these two types of costs. Right. So it's just the money. It's just the money, right, which is why the issues properly before this court. And, yeah, I think that's all I have to say on these issues. And as for other points, I think the law is, or other causes of action, I think the law is pretty straightforward that's laid out in our briefing. So if you have any questions about that, I'd be happy to answer that as well. Thank you. Thank you very much. Please go ahead. You have six minutes plus. Perez v. Cantwell, Perez v. Cantwell, Perez v. Cantwell. That's the United States Supreme Court decision, and that's the one that gets us past Finley. Because in Perez v. Cantwell, the U.S. Supreme Court said in 1971, states can't do this. They can't legislate around federal law. We have something called the Supremacy Clause. And here, bankruptcy code. Here, Kelly versus, you know, we're dealing in the federal realm here. And no matter what the intent of the state bar was in shopping the legislature back in 2000, 2003, to add in subsection E, which I say Doyle misrepresented to the court, and I think that that should be brought up to the Ninth Circuit too, because I gave you all of the legislative history. It's online now. Any court can now see that what Doyle said was incorrect. It had nothing to do with Taggart. And actually, it was shot to the state legislature under the representation that this was specifically limited to replenishing their client security fund. What they're asking me to pay would never, a dime wouldn't go into the client security fund because they're, and I still say it, acting like a debt collector, a third-party debt collector, charging 20 grand a pop to collect whatever amount that they want to collect. Do we know from the record that that discovery sanction was not paid out of the client fund? Yes, we do. There's no evidence of that. And they didn't come under, that would come under 6140.7. So the record doesn't say that it was, but it also didn't say it wasn't. The record we have is what I'm saying. Yeah, because in the reporter's transcript, Clarkson, I believe, asked, and we'll probably get a nod in a few seconds. It might be in the, let me put it that way. It might be in the record. Well, we can look at that ourselves. So, but what the U.S. Supreme Court said in Perez v. Campbell in 1971 was very clear is that states cannot try to override these types of relief. And here the whole point of bankruptcy is to give the debtor a fresh start. The honest but unfortunate debtor. The honest but unfortunate, and I wasn't found to be dishonest. So, you know, it includes me too. It does include us lawyers, although, you know, we do get a bad rap for a lot of things. And so no matter what Finley says, no matter what Taggart says, the Ninth Circuit must follow Perez too. I just, it just looks like the panel in Finley was very swayed by some representations that they believed to be true, which weren't true. I don't think, you know, it had nothing to do with how the judges viewed 523A7. But I can't make some fact-finding on what the Ninth Circuit listened to and what they didn't, right? No. There's, can't do that. Right, but you must follow U.S. Supreme Court law. Well, is there a difference between Perez saying, you know, if a federal law says A, state law can't say non-A, versus federal law says A and state law says, well, let me tell you how we interpret that. Aren't those two different things? Yeah, those are two different things. Okay. And the way that it's been interpreted. I mean, is this really preemption or just the state doing what states do, which is kind of give us some ground rules about property rights and all those kinds of things, which is how our system works, right? Right, yeah, but in this case, if you look at which my sanction was Section B of that statute, not E but B as in boy, it literally lists out investigation costs, court reporter costs. And clearly 523A7 says it's got to be a fine. It can't be a cost. Kelly, even in the criminal, you know, in the seminal criminal case said, you know, this type of cost is dischargeable. You know, this doesn't fit under this narrow exception. And the burden's on the creditor. The burden isn't on me to prove that these are dischargeable. The burden's on them to prove this exception. Well, they amended the statute. Right, yeah, well, yeah, and, you know, they already have one, 6086.13, which is the sanction statute, which only goes up to 5,000. If they amended it any further, it would even be a stronger unconstitutional argument. You know, ABA Model Rule 10, just on suspension, say suspension, they're supposed to be finite. What this is is this is a conditional disbarment, disbarment based on lack of wealth. That is another constitutional problem, because now that's disparate treatment under the Equal Protection Clause. I just don't want to see Finley turn into something that's going to take 50 years for us to get corrected. There's a lot of levels here, and I appreciate this court, and I hope that this court sees all of them. It is, just to hit her other things, it wasn't my duty to appeal a void judgment. There's no case law that says that. All the cases say you just ignore a void judgment. It was void because you didn't have notice? Right. Did you raise that argument with Judge Clarkson? Yes, and we went through not only notice, but also you can't say an attorney until you have jurisdiction over them. The jurisdiction was by statute in this case, which was 2023.040 of the CCP, and it says in there that you must identify the attorney in the notice of the motion, and I wasn't in the notice of the motion of any of those notice of motions, so those orders were never supposed to be out there in the first place. You did have actual knowledge of what was going on, at least after you came into the case, though, right? Right, yeah. I mean, those papers were filed, and seven days later the order was issued. But there was no jurisdiction over me, and that's the Morvey-Kaufman case that goes through that. And then second is we have our whole due process, just notice. If you're going to sanction an attorney, you can't do discovery sanctions in the state of California without giving actual notice of at least 16 court days. So this just could never happen. It's like an ex parte basis. Thank you very much. The matter is submitted. Thank you both for your arguments. Please call the next case.
judges: Faris, Lafferty, and Spraker